WILLIG, WILLIAMS & DAVIDSON
By: Patricia V. Pierce, Esq., ID#23129
By: James A. Wells, Esq., ID#83517
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
(215) 656-3600
facsimile (215) 561-0108 or 5135

ATTORNEYS FOR
INTERVENER-PLAINTIFF
SARAH FRANCIS

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | CIVIL ACTION |
| Plaintiff, | |
| and | |
| SARAH FRANCIS, | No. 04-CV-4583 (JKG) |
| Intervener-Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| CINGULAR WIRELESS, L.L.C. and GARY HOPKINS, | |
| Defendant. | |

## COMPLAINT ON BEHALF OF INTERVENER-PLAINTIFF

**Parties**:

    1.    Plaintiff Sarah Francis is an adult individual residing in the Commonwealth of Pennsylvania and formerly employed by Defendant Cingular Wireless L.L.C. (hereinafter "Cingular") as an assistant sales manager.

2.      Defendant Cingular is an employer as defined by Title VII of the Civil Rights act of 1964, 42 U.S.C. §2000e *et seq.* (Title VII), the Pennsylvania Human Relations Act, 43 P.S. §951 *et seq.* (PHRA), and the Family Medical Leave Act (hereinafter FMLA), 42 U.S.C. §2617 *et seq.*

3.      Defendant Gary Hopkins is an adult individual who was at all relevant times employed by Cingular Wireless as a supervisor, and who in his capacity as a Cingular employee exercised supervisory authority over Ms. Francis.  At all relevant times, Mr. Hopkins was an agent of Cingular.

**Jurisdiction:**

4.      On December 16, 2003, Plaintiff filed a discrimination Complaint with the Equal Employment Opportunity Commission ("EEOC").  Counts I and III of this Complaint assert claims pursuant to Title VII over which this court has jurisdiction pursuant to 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §1331, 1343 and 1367.  Count II of this complaint assert claims under Pennsylvania State law, over which this court has jurisdiction pursuant to 28 U.S.C. §1367.

**Venue:**

5.      Venue for the instant action properly lies in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(b).

**Facts:**

6.  Ms. Francis was hired by Defendant Cingular on October 15, 1998 as a Sales Consultant in Cuyahoga Falls, Ohio. In May 2002, she was transferred to a Cingular store at Broadcasting Plaza in Wyomissing, Pennsylvania as a Salesperson.

7.  In November of 2002, she was promoted to the position of assistant sales manager and relocated to Defendant Cingular's Berkshire Mall. In this position she reported to the sales manager, Defendant Gary Hopkins.

8.  On February 23, 2003, Defendant Cingular sponsored a gathering in a "superbox" at the Wachovia Center in Philadelphia, Pennsylvania during a 76er's basketball game.

9.  The event was for Cingular sales managers and assistant sales managers. Both Defendant Hopkins, a Cingular manager, and Ms. Francis, a Cingular assistant manager, attended the event. All of the attendees were Cingular employees.

10. Defendant Hopkins drove Ms. Francis from Wyomissing to Philadelphia in his vehicle.

11. While at the event both Defendant Hopkins and Ms. Francis spoke to each other and to other Cingular management employees. The event was seen by Ms. Francis as an opportunity to network within the company and lay the groundwork for

future advancement.  Ms. Francis heard Defendant Hopkins speaking highly of her to other managers and was under the impression that Mr. Hopkins was going to assist her promotion in the company.

12.   At the conclusion of the event, Defendant Hopkins suggested to Ms. Francis that they go to a bar called "Fat Tuesday's" in the South Street section of Philadelphia.  Ms. Francis agreed.

13.   From there, Defendant Hopkins suggested going to a club called "Shampoo" in a different part of the city.  Again, Ms. Francis agreed.

14.   Ms. Francis was alone with Defendant Hopkins the entire time after the Cingular event at the Wachovia Center.

15.   While en route back to Wyomissing from Shampoo, Defendant Hopkins stopped in an unknown location and raped Ms. Francis in the front seat of his vehicle.

16.   Defendant Hopkins took Ms. Francis to her home, and raped her two more times there.

17.   On February 27, 2003, Ms. Francis reported to Ms. Tara Anderson, Defendant Cingular's Regional Human Resources Manager in Atlanta Georgia, that she had been sexually assaulted by Defendant Hopkins.

18.     Ms. Anderson placed her on an unspecified paid leave of absence.

19.     Ms. Anderson repeatedly told Ms. Francis "not to worry" about her job and to "take care of herself."

20.     Ms. Anderson did not designate the leave pursuant to the FMLA, nor did Ms. Anderson provide any information to Ms. Francis about her options or obligations under that Act.

21.     On May 23, 2003 Ms. Francis received three separate letters from Ms. Maxine Allen at Metlife, Cingular's insurer. The first letter informed her that her "request" for Family Medical Leave was approved "effective February 27, 2003."

22.     The second separate letter informed her that her "request" for Family Medical Leave beginning May 22, 2003 was denied "because [she] previously exhausted [her] twelve week FMLA entitlement."

23.     The third separate letter informed her that she was approved for short term disability from April 18, 2003 to June 1, 2003.

24.     The letters did not reference each other in any way.

25. In June 2003, Ms. Francis spoke to Ms. Anderson and informed her that she wanted to return to work.

26. Ms. Anderson told Ms. Francis that her prior position as assistant sales manager at the Berkshire Mall location had been eliminated, thus she could not have that position.

27. Ms. Anderson directed Ms. Francis to apply for jobs posted on Cingular's website.

28. Ms. Anderson told Ms. Francis that she was being placed on "unpaid" leave, but that she could remain in that status until a position at Cingular opened up.

29. Again, Ms. Anderson did not designate the leave pursuant to the FMLA.

30. Upon inspection of Cingular's website, Ms. Francis found each of the available jobs either required significant travel or greatly reduced levels of compensation in comparison to her former position.

31. In May of 2003, Defendant Cingular hired an assistant sales manager at the Berkshire Mall location.

32. Defendant Cingular not only failed to rehire Ms. Francis in her former position, but also represented that the position had been eliminated, when in fact it had not.

33. On July 24, 2003, Ms. Francis received a letter notifying her that her employment was terminated because she had "abandoned" her job and had "voluntarily resigned" from the company.

## Count I
## Violations of Title VII

34. Plaintiff realleges paragraphs 1 through 33 as set forth above and incorporates them by reference as though fully set forth within.

35. Title VII prohibits discriminatory treatment in employment on the basis of sex.

36. The actions of Defendant Gary Hopkins, a supervisor at Cingular, violated Title VII.

37. Defendant Hopkins was aided in accomplishing his harassment of the Plaintiff by his position as an agent of Defendant Cingular.

38. Defendant Hopkins, as Ms. Francis' supervisor, employed by Defendant Cingular, was acting within the scope of his employment when he took Ms. Francis to an event sponsored by Cingular, executed by Cingular employees, exclusively for Cingular employees.

39. Hopkins was further acting within the scope of his employment when, with power conferred by Cingular as Ms. Francis' supervisor, he requested that she accompany him to two other establishments after the event at the Wachovia Center.

40. Defendant Hopkins was aided in his subsequent sexual assault of Ms. Francis by his position as an agent of Defendant Cingular.

41. Ms. Francis reported the assault to Defendant Cingular and was placed on leave.

42. Cingular then acted with malice, and/or intentional indifference to her civil rights by terminating her employment despite her repeated requests to return to work.

43. Cingular knew or reasonably should have known that Defendant Hopkins had a propensity for sexual harassment and needed a heightened level of supervision because of prior allegations of such behavior by other female employees. Defendant Cingular's failure to adequately monitor and supervise Defendant Hopkins, and/or provide warnings to female employees constitutes a violation of Title VII.

44. As a result of Defendant Cingular's lack of supervision, Defendant Hopkins' sexual assault and Defendant Cingular's subsequent retaliation, Ms. Francis suffered loss of employment, lost wages, extreme mental anguish, personal humiliation and disruption of her personal life.

## Count II
## Battery

45. Plaintiff realleges paragraphs 1 through 44 as set forth above and incorporates them by reference as though fully set forth within.

46. On February 23, 2003 Defendant Hopkins acted with the intent of causing offensive and harmful bodily contact to Ms. Francis without her consent, and such contact did result.

47. On February 23, 2003, Defendant Hopkins committed battery by raping Ms. Francis three separate times.

48. As a direct and proximate result of Defendant Hopkin's actions, Ms. Francis suffered and will continue to suffer extreme mental pain and anguish, personal humiliation, disruption of her personal life, painful embarrassment, loss of enjoyment of the ordinary pleasures of everyday life, loss of employment and lost wages.

## Count III
## Respondent Superior

49.     Plaintiff realleges paragraphs 1 through 48 as set forth above and incorporates them by reference as though fully set forth within.

50.     An employer is liable for acts of its employees when those acts are committed during the course of and within the scope of that employees' employment.

51.     At all relevant times, Defendant Hopkins was employed as a sales manager by Cingular, and had supervisory power over Ms. Francis, who was also a Cingular employee.

52.     Defendant Hopkins, acting in a supervisory capacity, drove Ms. Francis to a Cingular sponsored event in Philadelphia, specifically for Cingular employees engaged in management responsibilities.

53.     Defendant Hopkins, still acting in a supervisory capacity and as an agent of Cingular, requested that Ms. Francis accompany him to two other establishments in Philadelphia.

54.     While Defendant Hopkins drove Ms. Francis back to Wyomissing, he raped her in his car and at her home.

55.	Because Defendant Hopkins was acting as an agent of Cingular for the entire evening, transported Ms. Francis to the Cingular managerial event in the course of his supervisory position under the auspices of Cingular, and transported her home in the same capacity, Defendant Cingular is responsible for the acts of its agent, Defendant Hopkins.

## Count IV
### Negligent Retention/Supervision

56.	Plaintiff realleges paragraphs 1 through 55 as set forth above and incorporates them by reference as though fully set forth within.

57.	Cingular knew that other employees had previously complained of sexual harassment by Defendant Gary Hopkins.

58.	Cingular allowed Defendant Hopkins to remain employed as a manager of female employees in their Berkshire Mall location, including Ms. Francis.

59.	Despite being on notice of the prior sexual harassment complaints, Cingular took no preventative measures whatsoever in regard to Defendant Hopkins, nor did they place him on any heightened level of supervision.

60.     Cingular sponsored a semi-social event in Philadelphia for its managerial staff, and required both Ms. Francis and Defendant Hopkins to attend.

61.     Cingular, with full notice that other female employees had complained about sexual harassment by Defendant Hopkins, made no effort whatsoever to supervise Defendant Hopkins' interactions with female employees before, during or after the event, specifically in regard to Ms. Francis.

62.     Defendant Hopkins then committed three criminal acts of sexual harassment against Ms. Francis by raping her three times on the night of February 23, 2003.

63.     As a direct result of Cingular's negligent supervision and retention of Defendant Hopkins, Ms. Francis suffered and will continue to suffer extreme mental pain and anguish, personal humiliation, disruption of her personal life, painful embarrassment, loss of enjoyment of the ordinary pleasures of everyday life, loss of employment and lost wages.

## Count V
## Violations of the Family Medical Leave Act

64.     Plaintiff realleges paragraphs 1 through 63 as set forth above and incorporates them by reference as though fully set forth within.

65. The FMLA, 29 U.S.C.S. § 2601 et seq. guarantees eligible employees 12 weeks of leave time in a one year period following certain events affecting the health of the employee or the health of the employee's family members. Upon the employee's return, the employer must reinstate the employee to her former position or an equivalent position within the company. 29 U.S.C.S. § 2614 (a)(1). The Act makes it unlawful for an employer to interfere with, restrain, or deny the exercise of these rights. 29 U.S.C.S. §2615(a)(1).

66. When a employee takes a leave of absence, and the employer has the knowledge that the leave is for a proper FMLA reason, the employer must give the employee notice that the leave is being designated as FMLA leave. 29 CFR §825.208(c). If the employer fails to provide this notice, she cannot designate the leave as FMLA leave retroactively. *Id.* An employer may only designate the leave time *after* the notification as FMLA leave. *Id.* Once an employer is on notice that an employee will be taking leave, the employer is required to provide the employee with *individualized* written notice detailing the specific expectations and obligations the employee has under the Act. 29 CFR §825.301(b)(1). Notice of the employee's rights and obligations under the FMLA must be given within a reasonable time after the employee informs the employer of the need for a leave- one or two days if feasible. 29 CFR §825.301(c)(1).

67. An employee eligible for leave under 29 U.S.C.S. §2611(2) is defined as one who has been employed for at least 12 months with the employer from which leave is requested and worked 1,250 hours in the previous 12 month period.

68. Ms. Francis, as of February 23, 2003, had worked continuously at Defendant Cingular for a total of four years and four months. Ms. Francis is an eligible employee under the Act.

69. Employers bound by the Act are defined in 29 U.S.C. §2611(4) as any person engaged in commerce or in any industry affecting commerce who employs 50 or more employees for each working day during each of the 20 or more calender workweeks in the current or preceding calender year.

70. In 2003 Cingular had 39,400 employees, and had similar numbers of employees in the prior year, therefore it is bound by the Act.

71. On February 27, 2003, when Ms. Francis was put on unspecified "leave" by Ms. Anderson, Cingular failed to notify Ms. Francis that she was being put on FMLA leave.

72. By informing her on May 23, 2003 that the prior three months would be considered FMLA leave, Cingular impermissibly retroactively designated that time as FMLA leave.

73. Ms. Francis was prejudiced by Cingular's failure to provide notification of her rights and obligations under the Act.

74. In June 2003 Ms. Francis repeatedly expressed her desire to end her leave of absence and come back to work for Cingular.

75. Cingular impermissibly refused to allow her to return to her previous position as assistant sales manager at their Berkshire Mall location, or place her in an equivalent position as required by the FMLA, thus interfering with her rights under that Act.

76. On June 24, 2003, Ms. Francis received a letter informing her that she was terminated for "not being on qualified leave."

77. Because Ms. Francis was, in fact, on qualified leave, and actually wanted to end her leave and return to work but was not permitted to do so, Cingular retaliated against her for exercising her rights under the FMLA.

78. As a direct result of Cingular's impermissible actions, Ms. Francis suffered loss of employment, lost wages, financial hardship, mental distress and an adverse impact on her future employment prospects.

**Wherefore,** Plaintiff requests that this Honorable Court grant the following relief:

a) Award Plaintiff appropriate equitable relief including, but not limited to back pay and front pay;

b) Award compensatory damages to Plaintiff;

c) Award punitive damages to Plaintiff;

d) Award reasonable attorney's fees and costs; and

e) grant such other relief as the Court deems just and proper under the circumstances.

Respectfully Submitted,

WILLIG, WILLIAMS AND DAVIDSON
Attorneys for Intervener Plaintiff
Sarah Francis


By: _____ PP1522
   PATRICIA V. PIERCE
   JAMES A. WELLS

DATE: December 20, 2004.